McConnel et al. *v.* Smith, Adm'r, etc., et al.

MURRAY McCONNEL *et al.*, Appellants, *v.* DAVID A. SMITH,. Adm'r of Jerome McKee, Sen., dec., *et al.*, Appellees.

### APPEAL FROM SCOTT.

A will which directs, that after debts are paid, etc., that the residue shall be equally. divided between the wife of deceased and a nephew, and that if the personalty. left will not pay the debts, that the administrator shall sell such of the real estate as he shall think most advantageous, to pay the debts, etc., will, under our statute, devise the real estate in fee.

A posthumous child will take directly from the parent, with the same effect as if it. had been born at the time of the decease of the parent. The case of *Detrick v. Migatt*, 19th Ill. R. 146, adhered to.

A bill of revivor against a posthumous child, not a party to a suit, cannot be filed so as to divest his title *nunc pro tunc*.

Depositions taken between the same parties, in an ejectment suit, where the same property was involved, are admissible in evidence in chancery, where the same subject matter is in litigation.

Where a bill is dismissed, the answer and other proceedings go with it. Specific relief cannot then be given on an answer. The remedy is by cross-bill.

THIS bill, which is a bill of revivor, presents the following state of facts:

In December, 1838, one Jesse McKee, of Morgan county, died, being the owner of the real estate now in controversy.

Said Jesse McKee left a will, as follows:

" That William McKee will administer on my estate, and to do as herein directed; that he shall sell and dispose of the stock of goods now on hand to the best advantage, the same as I would have done myself during my life, and whatever is policy to do in order to pay the demand against said stock of goods. After paying all just debts against my estate, my will is, that the residue be divided equally between my wife, Jane, and my nephew, Jerome McKee; and if the above mentioned stock of goods and outstanding debts, after collected in, shall not be sufficient to settle all just demands against my estate, it is my wish that my administrator shall sell such of my real estate as he shall think most advantageous, in order to pay such demands. It is my wish that the demand held by my brother William, shall be paid first, and Orrin Cobb second," etc., etc.

Said administrator proved the will, took out letters, and took possession of all the property, both real and personal, and proceeded to carry out the provisions of the will.

When said McKee died, he was indebted to one Holoway W. Vansyckel, as successor of the firm of McConnel & Vansyckel, who were successors of the firm of McConnel & Ormsbee & Co., which claim said administrator, William McKee, recognized as just, and from time to time promised to pay.

On the first day of January, 1848, the widow of Jesse McKee (one of the legatees in the will) released and assigned to Jerome McKee, the other legatee in the will, all her interest in certain real estate, which had belonged to said Jesse, whereby said Jerome became the sole party interested in the most of the land here in controversy.

In the spring or summer of 1849, Wm. McKee, the administrator, returned to Illinois from Ohio, and informed Vansyckel that said legatee, Jerome McKee, was dead, and had left a wife and no children, and left a brother and himself (his father) his heirs. Said administrator then pointed out *the whole of the property now in controversy,* as belonging to the estate of Jesse McKee, deceased, and out of which said Vansyckel might proceed to make his debt. Vansyckel then brought a suit in

chancery, in the Scott county Circuit Court, against said acting executor to recover said claim, to which suit the widow, brother and father of the said legatee, Jerome, were made parties, they being the surviving heirs of said Jerome McKee. Process was served and testimony taken, proving said debt, and a decree rendered against the estate of Jesse McKee, directing that the defendants pay the same out of said estate of Jesse McKee, also that this property in controversy *was the property* of said estate, and that in case said debt should not be paid, that said property be sold to pay the same. The debt was not paid, and the land was sold under said decree, by a master in chancery, on the 19th of November, 1849, which was reported to and approved by the court, and the property went immediately into the possession of the purchasers. The record of said suit is in evidence in this case, and is admitted by bill and answer.

In 1852, defendant, Smith, claimed to be a creditor of said Jerome McKee, deceased, and claimed that this property belonged to the estate of Jerome, as legatee under the will of Jesse McKee, deceased, and by virtue of said deed from Jane McKee, the widow, and not to the estate of Jesse, and was not subject to pay the debts of said Jesse McKee; and said Smith, as creditor, took out letters upon said Jerome's estate, and has proceeded to sell this same land to his co-defendants herein, to pay Jerome's debts, although it had been sold under a valid decree, after the death of said Jerome, in a suit against his widow and heirs and said executor of Jesse McKee.

The bill alleges, that both parties claim all this land under title from Jesse McKee, and the estate of Jesse McKee, deceased.

The defendants, in their answer to that part of the bill, admit the truth of said allegation, and that both and all parties claim under Jesse McKee, deceased.

It is also admitted by the pleadings, that the will of Jesse McKee, and the record of said suit and decree, under which said land was sold to these complainants, are as set out in said bill, and that said will charges all said estate, first, with the payment of the debts of Jesse McKee, deceased. It is admitted that Jerome McKee died, leaving *as his heirs*, his wife, Isabel, his brother Samuel, and his father, William McKee, and that they were all parties to said suit in chancery, under which said land was sold to these complainants.

The bill charges, and the record shows, that all the rights to all said lands, whatsoever they may be, which were in Jerome McKee, at the time of his death, came through Jesse McKee's estate, and were sold under said original decree.

The bill charges, that if such posthumous child was born after said debt was proven, and decree made (which is denied), said child is but *substituted* in the place of the existing heirs, who were the only legal heirs when said decree was made, and that, as the substitute for said heirs, and as heir to said Jerome McKee, who was legatee under the will of Jesse McKee deceased, from whose estate the property is derived, said child is *privy in estate* to Jesse McKee, and his executor, *and is bound by said decree and sale*, as the heirs parties to said suit were bound, for whom said child was *substituted* after the decree was entered, and a court of equity, in a case like this, and *in the absence of all fraud*, will revive said decree against said heir, and make him a party thereto.

The decree, by Woodson, Judge, dismisses the bill of the complainants, and proceeds to grant affirmative relief to said defendants *under their answer*, and decrees the *title* to them.

The decree decides the suits in ejectment now pending in the court of law, and orders writs of possession to issue, and renders a decree for costs in the ejectment cases.

The errors assigned are, the dismissal of the bill, and refusing the relief prayed, to wit, that a perpetual injunction be granted against said claims and said actions in ejectment, and that the said complainants be quieted in their said rights as against the said estate of Jerome McKee, deceased; and the granting this decree to the defendants, and deciding that the plaintiff in ejectment had a title to those lands claimed; and excluding the right of the defendants therein to show a better and paramount title upon a trial at law of said cases.

M. McConnel, and H. Case, for Appellants.

D. A. Smith, for Appellees.

Walker, J. It is insisted that the testator has failed to employ language, in this will, which can operate to pass the title to the real estate in controversy, to the devisees. And that, by his death, the property descended to and vested in his heirs-at-law. It is true that this will does not employ language that would formerly have been regarded as sufficient in a deed, to pass the fee, as no words of perpetuity were used. It simply declares that the residue of his estate, after the payment of his debts, shall be divided between his wife and his nephew, Jerome McKee. Following this, there is no limitation or qualification, except that the executor shall have power to sell the real estate for the payment of his debts, if his personal estate proved insufficient for that purpose. The 13th section of the

conveyance act provides, that " every estate in land, which shall be granted, conveyed or devised to one, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction of law." It will hardly be questioned that the testator intended by this will, to confer upon his widow and Jerome McKee, some interest in the residue of his estate, after the payment of his debts, and he must have intended that a portion, at least, of that residue, should consist of real estate, as he, by the will, charges his personal estate as the primary fund for their payment. He did not limit the estate by any express words, nor did he employ language from which a less estate than a fee simple would be implied. It will also be observed that, after requiring the residue of his estate to be divided between the devisees, he creates no remainder or limitation over, of this estate. And the term estate is here used in its largest and most comprehensive sense. It is neither limited to personal or real estate, but evidently was intended to embrace all that should remain, of every description, after the payment of his debts. The language employed manifests an intention to devise the property in fee, or he would surely have either expressly or impliedly declared a different intention.

Even if cases may be found which hold that such a devise would not pass a fee simple estate, they cannot control this case, as it is governed by our statute. This enactment was adopted on the 20th of July, 1837, and was in force at the time of the death of the testator. And, by its provisions, even if they could not have taken a fee in these lands, independent of its provisions, they took a fee simple, subject alone to the power of the executor to sell for the payment of the debts of the testator, after the personal property was exhausted.

But were this not so, and the heirs-at-law took by descent, his widow inherited one-half of the real estate, and all of the personal property which remained after the payment of the debts. She afterwards, with her husband, conveyed all of her interest in these lands to Jerome McKee, the other devisee named in the will, and the executor, the only brother, and the other heir of the testator, as executor of the will, conveyed all of this estate to Jerome McKee, for the payment of the debts of the estate. The deed recites, that on the settlement of the estate, it was found to be indebted to the executor in the sum of twenty-four hundred dollars, which was the consideration of the conveyance. It in no wise affected the validity of the sale, that the executor took a bond for the payment of the purchase money, and

reserved the power to sell the property for its payment. By the conveyance, in the exercise of the power given by the will, the title passed to the grantee, Jerome McKee. This power to sell under the will seems to have been well executed, and passed the title to the purchaser, if it had not already vested by the terms of the will. Then, whether he took one-half of the estate as devisee, and the other half as purchaser from his co-devisee, or by purchase from the executor, under the power contained in the will, can make no difference, as in either case he was the owner of the property in fee, at the time of his death.

Having died, however, before the decree was rendered for the sale of the property to pay Vansyckel & McConnel's claim, and neither he, nor his posthumous heir, having been a party to that proceeding, it is urged, by defendants in error, that no title passed by the sale of the property under that decree. On the other hand, it is insisted, that by the death of Jerome McKee, the title vested in his heirs, then in being, until the posthumous heir was born, and that the decree for the sale of this property, having passed before that event occurred, that it became a lien upon the property, that could not be defeated by the birth of this posthumous child, the heirs then having the title having been made parties to that proceeding. And we are asked to review the decision of this question, which was determined when it was formerly before the court, in the case of *Detrick* v. *Migatt*, 19 Ill. R. 146. In that case it was held, that a posthumous child took directly from the parent, and with the same effect, as though in being at the death of the parent, and that the estate must remain, during the period between the death of the parent and the birth of the child, in abeyance. This conclusion was arrived at, upon the construction of the statute. The court then held, that it necessarily results, that the posthumous child, taking the estate immediately from the parent, as though born in the lifetime of the parent, and not having been a party to the proceeding in which the decree was rendered, that his rights remained unaffected by it.

Whatever might have been our inclinations, had this question now come before us for the first time for determination, we are not now inclined to disturb that decision. The value of real estate depends so essentially upon permanency of titles, that nothing short of a strong necessity should ever induce courts to change a rule of property. When sales are made, and covenants entered into, on the faith of the decisions of courts of last resort, the change of the rule, unless it is manifestly wrong, and is calculated to work great injustice, should not be made. In this case, no such necessity is apparent, and

we are therefore disposed to adhere to the rule as laid down in that case. And we must hold, that to divest the title of this property out of this heir, he should have been made a party to that proceeding, and not having been, the decree is no more binding upon him, than upon any other stranger to it. This being the case, the parties in interest have no power now, to file a bill of revivor, and thereby make him a party to the decree, so as to divest his title, *nunc pro tunc.* He was a necessary party to that proceeding, and while he was not, to the allowance of the claim in the probate court, upon which the decree was based, yet when the application was made to sell his land to satisfy that claim, he had the right, before the decree passed, to show that it was not properly allowed against the estate, its allowance being, as against him, only *prima facie* binding. *Stone* v. *Wood,* 16 Ill. R. 177 ; *Hopkins* v. *McCann,* 19 Ill. R. 113.

The question of whether the parties in interest may revive that proceeding against him, and subject this property to sale in satisfaction of that decree, unless it were impeached, is not before us for determination. The bill in this case is not framed with a view to such relief, nor was evidence taken for a hearing upon that question. We therefore decline, at this time, to determine whether the purchasers under the sale of Jerome McKee, administrator, took the property freed from Vansyckel & McConnel's claim against the estate of Jesse McKee. And even had the frame of the bill, and the evidence in the case, presented that question, Vansyckel would be a necessary party, before a hearing could be had.

It is also urged, that the evidence in this case fails to show, that Jerome McKee is the posthumous heir of Jerome, deceased. This fact is abundantly proved by the depositions of Scoby and Brown, previously taken, to be read in evidence in the ejectment suits, to enjoin which this proceeding was instituted. They were taken in suits between the same parties, where the same property was involved, and this question was in dispute. These depositions were admissible as evidence under the rule laid down in the case of *Wade* v. *King,* 19 Ill. R. 301.

But when the court dismissed the bill, the answer and other pleadings in the case shared the same fate. Chancery practice does not authorize the court to retain an answer after dismissing the bill, and even if it did, specific relief cannot be decreed on the defendant's answer. Where the defendant's case entitles him to such relief, to render it availing, he must file his cross-bill, properly framed to meet his case, and this is the case whether the complainant's bill be retained or dismissed. This has been repeatedly held by this court, and is regarded as the

settled practice. The decree of the court below, finding the
title in the·defendants, and decreeing the surrender of the pos-
session of the premises to them, being specific relief, was erro-
neous, and unauthorized by the pleadings. The decree of the
court must therefore be affirmed, so far as it dismissed the com-
plainants' bill, and decreed the payment of the costs of that
court by them, but is reversed in all other respects, and the
defendants will pay the costs of this court.

*Decree modified.*