KATE A. WEED, ADMINISTRATRIX, VS. PENELOPE L. STANDLEY.

1. An agreement in writing properly executed, and stipulating that the amount due for rent of land should be paid before the crops are removed, held to be a " security for the payment of money," and under the provisions of the statute to operate as a mortgage.

2. But being a mortgage on personal property, no *lien* is thereby created, unless it be duly recorded in compliance with the requisition of the statute.

3. The act of 1865–6, entitled " An Act for the relief of Landlords," was designed only to enlarge and extend the " remedy" for the collection of rent, and does not interfere with any pre-existing "rights" of the parties.

Appeal from Suwannee Circuit Court.
This case was decided at Tallahassee.

*C. P. Crawford and H. Bradford*, for Appellants.

*O. A. Myers* of counsel.

In January, 1867, an agreement was entered into between appellee, P. L. Standley and Reuben Weed, decedent,

whereby said Standley leased to said Weed her plantation in Alachua county, known as the James W. Standley place, for the year 1867. The said agreement contains a covenant by said Weed to pay to said Standley therefor the sum of $1,500, " as follows, to-wit : Seven hundred and fifty dollars (750,) on the first day of December, 1867, and the other half before the crop is removed from the plantation."

On the 22d October, 1867, Reuben Weed died, and letters of administration issued to Kate A. Weed, appellant, on the 11th November, 1867. The sale of the property of the estate was advertised to take place on the 16th Dec., 1867, on which day appellee sued out a distress warrant and levied the same on the corn, cotton and cattle of said estate. The levy was dismissed and the sale proceeded on agreement that $1,500 of the proceeds be deposited with F. A. Underwood, subject to the order of court, and that the matter be referred to the Circuit Judge to decree either full payment to appellee as a preferred creditor, or pro-rata payment with the other creditors. Afterwards, and before the return of the chancellor's decree, appellant filed in the Probate's office a suggestion of insolvency of said estate. The chancellor decreed *full payment* as to a preferred claim. Appellant moved for a re-hearing, which was had on 16th January, 1868. The chancellor affirmed his previous decree and appellant appealed.

Points, &c.—Every claim against an insolvent estate in Florida must belong to one of the following general divisions, to-wit : 1. " Prior liens ;" 2. " Preferred debts ;" or 3. " Pro-rata claims ;" which are entitled to satisfaction in the order named.

1st Proposition.—A prior lien to be efficacious as such must ante-date decedent's death, to which insolvency relates back, for after legal insolvency, no creditor can, by his own act, enhance his own right to the disadvantage of other cred-

itors; 2 Williams on Executors, Thompson's Digest, 206; acts of 1853, 106, 8 Howard's U. S. Rep. 111.

2d Proposition.—A prior lien must divest the insolvent's *legal estate;* 10 Peters 612, 2 Wheaton 396, or it must be *res adjudicata;* 11 Fla. 111.

3d Proposition.—The covenants in appellees lease are not a *prior lien* for they do not constitute a mortgage; Thompson 376, 5 Fla. 376, 10 Fla. 133.

4th Proposition.—Appellee's claim is not a "preferred debt," being omitted from class by the act of 1853, p. 106, and expressly excluded by act of 1828; Thompson 206.

(*Note.*—The policy of the law has so uniformly condemned the barbarous discrimination between *specialty* and simple *written* contracts, that positive enactment alone can re-establish it.)

Does the *Distress Warrant* except appellee from the class of pro-rata creditors?

5th Proposition.—Apart from the act of 1866, p. 61, distrainor takes no advantage from the *writ*; because,

1st. The warrant being a quasi execution, was *illegal* as contravening the act of 1828, Thompson 205, protecting administrators for six months.

2d. It is contrary to equity, which enjoins the prosecution of individual claims and suspends *post-mortem* liens against insolvent estates; (1st prop.) 2 Williams on Executors, 8 Howard 111.

3d. It is repugnant to the act of 1853, which prescribes the manner [of establishing claims, order of payment, &c., and gives time to marshall claims, and ascertain their order of precedence and so protects the administrator against *devastavit.*

6th Proposition.—The act of 1866, p. 61 creates no preference for appellee, because,

1st. Being simply declaratory it creates nothing, but leaves the rights and remedies of parties as before, subject

to the insolvent act of 1853 and the act of 1828 protecting administrators from compulsory payment; Bacon's Abridg't. title "Distress."

2d. To do so would, *pro tanto*, annul the acts of 1853 and 1828, whereas the act of 1866 has no *words of repeal;* 5 Fla. 185, 11 Fla. 111.

3d. The act of 1866 relates strictly to *remedies* and does not seek to alter or enhance rights. "*Rights* are not enhanced by superiority of *remedy;*" 9 Peters 743, 10 Peters 614.

7th Proposition.—The act of 1866 does not, *pro tanto*, repeal or in anywise modify the act of 1853, but is itself limited by that act; the former being general in its character and applicable *inter vivos*, whereas the latter is exceptional in its nature and applies only to the estates of dead insolvents, *in gremio legis*.

The insolvent law is exceptional; (1) in providing a peculiar tribunal for determining claims, to-wit: Probate and administration; (2) in providing quasi adjudications, to-wit: "allowance of claims;" (3) in creating and grading liens by "preference and pro-rata;" (4) in abrogating executor's lien; (5) in suspending *post mortem* liens; (6) in annulling all prior liens except mortgages and judgments; (7) in making the administrator trustee or assignee for benefit of creditors, instead of representatives of decedent; (8) in forbidding the "race of diligence" among creditors.

*Quere.*—Can a lien really exist at all on insolvents estates or any other property *in gremio legis?*

*Note.*—The common law order of payment is, 1st. Debts to the Crown. 2d. Debts by statutes. 3d. Debts of record. 4th. Debts by specialty. 5th. Debts by simple contract.— 1 Swift's Digest, 459.

*J. B. Dawkins*, for Appellee.

1. The deed of lease has all the requisites of a statutory mortgage. See acts of 1838 and 1853.

2. If the Court should come to the conclusion that it is not a mortgage, then it is insisted that there is a special "*lien*" under the act of 1866, in reference to Rents.

DuPONT, C. J., delivered the opinion of the Court :

The argument on this appeal was heard at a term of the Supreme Court, recently held at Lake City, and the case was taken under advisement.

The record shows that on the 21st of November, 1866, an agreement in writing was entered into between the appellee and one Reuben Weed, the intestate of the appellant, whereby the appellee agreed to rent to the said intestate for, and during the year 1867, and for the consideration of fifteen hundred dollars, a plantation located in Alachua county, in this State. This agreement is shown to be under seal, and its execution to have been attested by two wit-- nesses. There is also an express stipulation contained in the agreement, that one half of the stipulated rent was to be paid on the first day of December, 1867, "the other half *before the crop is removed from the plantation."*

The record further shows, that Reuben Weed departed this life on the 22d day of October, 1867, and that administration was granted to the appellee soon thereafter. It is also shown that on the 16th day of December, 1867, a distress warrant was sued out at the instance of the appellee, and was levied on the corn, cotton and other property on the plantation, to satisfy the amount of the said rent, which then remained all due and unpaid. It is further made to appear that after the appellant had entered upon the administration, she becoming satisfied that the estate was insolvent, filed in the Court of Probate a written suggestion of the fact, and asked that the debts of the estate should be settled *pro rata.*

Upon this state of facts, the parties made up an agreed

case to be submitted to the adjudication of the Judge of the Circuit Court. The point to be adjudicated was, whether this claim for rent was to be paid in full, or to come in for its *pro rata* share, with the other debts against the estate. The court decided that the claim was protected by a special lien, growing out of the written agreement, and that it was to be paid in full. It is from this decision that the appeal is taken, and now brought here for our adjudication.

The counsel of the appellee bases her claim to priority of payment, upon two propositions : First, that the agreement in writing is essentially a statutory mortgage, and created a special lien upon the crops to be made upon the plantation, from the date of its execution. And, secondly, that by the provisions of the statute entitled " an act for the relief of landlords," (Pamp. Laws of 1865–6, page 61,) a special lien upon the crops is given, which takes the claim for rent out of the operation of the act providing for the distribution of insolvent estates. The relevancy of these propositions to the case before us will be seen by reference to the case of " Kimball, Sheriff, &c., vs. Jenkins, Adm'r," reported in 11 Fla. Rep., 111, wherein this court ruled that the words " all other claims or demands " occurring in the act of 1853, (providing for the distribution of insolvent estates,) are not to be construed as vacating prior existing liens, whether the same arise from contract or are given by mere operation of law.

In considering the first proposition we are inclined to the opinion that, under the very comprehensive terms of the statute which designates what character of writings shall be held to be mortgages, the agreement between these parties was of that character. The stipulation contained in the written agreement that the rent should be paid before the crops should be removed from the plantation, was manifestly designed to " secure the payment of the money," which should become due for the use and occupation of the same,

and brings this paper within the very words of the statute. (Thomp. Dig., p. 376.)   But though held to be a mortgage, it does not follow that any lien was thereby created, until all the conditions of the statute had been complied with.   The crops to be grown on the plantation, upon which it was the design to create a lien, was of that class of property designated as personal; and the statute expressly provides that "no mortgage of personal property shall be effectual or valid *to any purpose whatsoever,* unless such mortgage shall be recorded in the office of records for the county in which the mortgage property shall be at the time of the execution of the mortgage, or unless the mortgaged property be delivered at the time of the execution of the mortgage, or within twenty days thereafter, to the mortgagee, &c." Thomp. Dig., 183.   The record in this case furnishes no evidence that this paper was ever admitted to record, so that of whatever benefit it may be to the appellee, as evidence, to establish the amount of her demand against the estate, it cannot be invoked as creating a lien, which would give that demand a *priority* of payment.

The second proposition asserted by the counsel for the appellee assumes that, "by the provisions of the statute, entitled ' an act for the relief of landlords,' a *special lien* upon the crops is given, which takes the claim for rent out of the operation of the act providing for the distribution of insolvent estates."   We have examined this statute with great care, and are unable to discover, in either its phraseology or spirit, any design or intention on the part of the legislature to give any lien on the crops or other property for security of the rent agreed to be paid.   In the enactment of this sstatute it was manifestly the intention of the legislature only to enlarge and extend the "remedy," and not to alter any pre-existing "right," further than to require that when this enlarged remedy should be invoked, the right should be

evidenced by a " written contract, signed and sealed by the contracting parties, in the presence of two subscribing witeesses."

By reference to the law as it stood at the date of the enactment of this statute, it will be seen that the remedy by " distress" was limited to the amount of fifty dollars, and for the recovery of any larger amount the party was put to his action for " use and occupation." This statute only extended the remedy by " distress " to any amount that might have been agreed upon by the parties, provided the same were evidenced as before stated ; and the only reference to the matter of " lien " occurs in the second section, where it is declared that " such writ shall be a lien on all the crops made or grown on such land, for, and during the year for which such rent may be due, or to become due." Thus it will be seen that the *lien* given by this statute arises from the issuing of the " writ of distress," and as this writ was not issued until *after* the death of the intestate, it is clear that it does not come within the ruling in the case of Kimball vs. Jenkins, before referred to.

We have examined this case with great care, and after the most mature deliberation, are constrained to decide that, upon the facts of the case as they have been made known to us by the record, the demand of the appellee is not entitled to any preference over that of the other creditors of the estate. It is therefore ordered and adjudged, that the judgment of the Circuit Judge be reversed and set aside, and that the appellee be remitted to the Court of Probate, there to have her claim settled *pro rata* with the demands of the other creditors of the estate.

# DECISIONS

## OF THE

# SUPREME COURT OF FLORIDA,

## AT TERMS HELD IN 1868-'9.