William Hope v. Lula I. Johnson Adm'x., et als.—Syllabus.

in the discharge of a supposed public duty. An examination of the authorities and the principles governing such cases leads us to the conclusion that defendant was invested with public functions and the duties it owed were to the public, and as such it comes within the sphere of public functionaries, exempt from liability in tort, unless such remedy should be given by statute. As we have seen, no such remedy has been provided by statute, and the declaration shows that plaintiff is pursuing this course.

The judgment of the court below sustaining the demurrer is affirmed.

WILLIAM HOPE, APPELLANT, VS. LULA I. JOHNSTON, AS ADMINISTRATRIX, ET ALS., APPELLEES.

1. A chattel mortgage not under seal is an instrument of writing not under seal within the meaning of the provision of the statute of limitations of February 27th, 1872, (Section 10, p. 733, McClellan's Digest.) that actions upon any contract, obligation or liability, founded upon an instrument of writing not under seal must be commenced within five years after cause of action has accrued.

2. Where no delivery of the chattels intended to be mortgaged is made within twenty days after the execution of the mortgage, a legal record of the mortgage instrument under the act of November 15th, 1828, (Section 1, p. 213, McClellan's Digest,) is essential to the creation of a lien on the chattels, even as between the parties to the mortgage, but the twenty days is not a limitation upon the time for recording it; yet the lien of the mortgage may be lost by laches in recording the instrument.

3. The chattels described in a written instrument intended as a mortgage were not delivered within the time prescribed by the statute. Within two years and about six months after the execution of the instrument large payments were made on the debt intended to be secured. No other payment was made for about thirteen years, when the mortgagors made a small payment. Five years and about four months after the execution of the instrument it was put on record, but without acknowledgment or proof of its execution. About seven years after its execution one of the mortgagors conveyed part of the chattels to the other mortgagor in trust for the benefit of daughters of the latter, who were sisters of the former, which conveyance is charged to have been made and taken for the purpose of defeating the lien of the alleged mortgage, and to have been without consideration. Two years after the last payment a judgment at law for the balance of the indebtedness was obtained by the mortgagee against the administratrix or the mortgagor who had made the conveyance in trust. The mortgagors died insolvent after the last payment. Seventeen years after the execution of the alleged mortgage a bill in equity was filed against the administratrix and the beneficiaries of the deed of trust, to foreclose the instrument as a mortgage on the chattels conveyed by the deed of trust : *Held*, That the consummation of the lien of the mortgage was lost by the mortgagee's laches in failing to record the instrument.

4. The act of January 28th. 1853, (Sections 2 and 3, pages 765-6, McClellan's Digest,) declaring what instruments shall be deemed mortgages, and subjecting them to the ordinary rules as to foreclosures of mortgages, and declaring that no right of possession to the property mortgaged shall vest in the mortgagee through the simple failure of the mortgagor to pay the debt secured, etc., does not repeal the provisions of the act of November 15th, 1828, (Section 1, page 213, McClellan's Digest,) making the delivery of the property or the recording of the mortgage instrument, an essential to a chattel mortgage.

5. Where the real purpose of a bill, as shown by its general frame-

work and prayer, is to have an instrument declared a lien or mortgage on certain chattel property, and to restrain certain parties, who claim the property under a deed of trust charged to have been made by one of the alleged mortgagors in fraud of and to defeat the mortgage, from interfering with the property, it cannot, on account of allegations showing that a judgment at law has been obtained against the administratrix of the mortgagor who made such deed of trust, and that his estate is insolvent, be treated as a bill to subject the property to the payment of such judgment as being assets of his estate and liable, notwithstanding the alleged fraudulent conveyance, to the intestate's indebtedness.

Appeal from the Circuit Court for Osceola county.

The facts of the case are stated in the opinion.

*John A. Henderson* and *Sparkman & Sparkman* for Appellant.

*Hocker & Mabry* for Appellees.

(Judge Barnes, of the First Circuit, sat in the place of Mr. Justice Mabry, who was disqualified.)

Raney, C. J. :

The bill, all of whose material allegations are admitted by the demurrer, was filed May 14th, 1889, and presents a case in which Hope sold to A. D. Johnston, and A. D. Johnston, Jr., on November 30th, 1871, a stock of cattle at the price of $7,800, on twelve months' credit. The instrument of this date, executed by these vendees, whom we shall when referring to them jointly speak of as the John-

58          SUPREME COURT.

William Hope v. Lula I. Johnson Adm'x., et als.—Opinion of Court.

stons, was intended not only as a promissory note
for the sum stated, but also a lien or chattel mortgage
on the cattle sold and the "*Fluer de luce*" cattle. It
is not under seal, and consequently the designation of
it in the bill as a writing obligatory is entirely erro-
neous. No attempt seems to have been made to have
it recorded until the 18th day of March, 1877, or five
years, four months and eighteen days after its execu-
tion, when it appears to have been admitted to record
in Brevard county without acknowledgment or legal
proof of its execution. Intervening the date of its exe-
cution and that of this illegal recording there had been
payments on the indebtedness, and from the copy of
the instrument taken from such record and made an
exhibit to and a part of the bill, it appears that one
of those payments had been made June 19th, 1874, or
not quite three years before the record, others in 1873,
and the others either in or not later than 1872. These
payments aggregating $5,866.50 were not only made
prior to this record, but also must have been previously
endorsed on the instrument, since they appear on the
certified copy above the clerk's certificate. The bill
distinctly alleges that the Johnstons made payments
upon such instrument from time to time from Novem-
ber 30th, 1871, to July, 1887, amounting to $5,871.50.
The difference between this amount and that last stated
is $5, which sum must be the payment alleged to have
been made in July, 1887, and the only sum paid from
June 19th, 1874, to that time, a period of nearly thir-
teen years. Over seventeen years and five months in-

tervened between the execution of the mortgage and the filing of the bill, but the mortgage was not legally recorded in that time, nor has any other attempt at recording it been made.

The purpose of this bill is not to subject the "*Fluer de luce*" cattle to the payment of the complainant's judgment obtained May 11th, 1889, against the administratrix of the junior Johnston, as assets of his insolvent estate, and liable, notwithstanding the alleged fraudulent conveyance of the same, to the intestate's indebtedness. The bill is not framed on this theory. The allegations as to that judgment were, in our opinion, made only with a view to showing diligence or an absence of laches, and overcoming the bar of the statute. The real theory of the bill is, that the "*Fluer de luce*" cattle are still subject to the lien of the chattel mortgage of November 30th, 1871; it asks that it be decreed that such writing is a lien on them, and that they be sold to satisfy such lien, and for injunction restraining defendants from interfering with them, and for other consistent relief. The only status given to these cattle, that is adverse to the complainant's rights, other than that arising between him and the Johnstons from the simple failure to record the mortgage in a lawful manner and the mere lapse of time, is that originating in the deed of trust of March 6th, 1878. It is under this deed that the defendants, other than the administratrix, as they are represented by the bill, claim, and it is proper to ascertain definitely the meaning and effect of the allegations of the bill as to it. The

bill does not charge that there was never any delivery of the cattle under and in accordance with the deed of trust; or, in other words, that they remained in the possession of the younger of the two Johnstons, that they were not at the time of its execution, nor even when the mortgage was made, his individual property. It is true it speaks of the transaction as a "pretended sale," but the gravamen of the allegation in which this designation of the transaction or deed appears is, that the consideration named in the deed was false, and that in fact nothing whatever was paid by the elder Johnston, or any of the defendants to the junior Johnston, and that the deed was conceived in fraud and covin for the purpose of defeating the lien of complainant. This allegation is followed by another to the effect that the female defendants, the beneficiaries under the deed, had actual notice, and were cognizant of the fact that complainant had and claimed a lien on said cattle attempted to be conveyed by such deed of trust, and that they combined and confederated with the Johnstons to cheat, hinder and defraud complainant, and by such fraudulent and corrupt device to cover and conceal the said "*Fleur de luce*" cattle. It is then charged, in effect, that the record of the mortgage, as it was of record at the time of the execution and delivery of such "fraudulent and corrupt deed," was notice to all the world, and more especially to these respondents, that complainant had and claimed a lien on the property attempted to be conveyed by said deed, and that respondents took said cattle subject to complainant's equity in the premises.

The suit being, then, one to foreclose what is claimed to be a chattel mortgage on a stock of cattle, we must address ourselves to the first objection made by the demurrer, which is, that the bill does not show that complainant has any lien on the cattle, as the alleged mortgage is not shown by it to have ever been recorded. Our statute, section 5 of "An act regulating conveyances of real and personal property and the recording thereof," approved November 15th, 1828, (Sec. 1, p. 215, McClellan's Digest,) enacts that no mortgage of personal property shall be *effectual or valid to any purpose whatever unless* such mortgage shall be recorded in the office of records for the county in which the mortgaged property shall be at the time of the execution of the mortgage, *unless* the mortgaged property be delivered at the time of the execution of the mortgage, or within twenty days thereafter, to the mortgagee, and shall continue to remain truly and *bona fide* in his possession. It then provides what proof is necessary to entitle it to be recorded; and of course a record on other than legal proof is not legal or valid for any purpose. Sanders vs. Pepoon, 4 Fla., 465; McCoy vs. Boley, 21 Fla., 803; Einstein vs. Shouse, 24 Fla., 490, 5 South. Rep., 380; Edwards vs. Thom., 25 Fla., 222, 5 Southern Rep., 707; Reese vs. Taylor, 25 Fla., 287-8, 5 South. Rep., 821. In Weed, Admx., vs. Standley, 12 Fla., 166, decided about twenty-four years ago, the intestate of the appellant had executed a paper which, under the comprehensive terms of our statute designating what writings shall be considered mortgages, was

held in character a mortgage of the crops to be made on the land leased to the intestate by the appellee. The intestate died about eleven months after the execution of the mortgage, and the appellant, his administratrix, having suggested the insolvency of the estate, a question arose between her and the appellee, as to whether appellee should be paid in full as having a special lien on the crops, or *pro rata* with other creditors. This court, after stating what the statute *expressly provides*, about as we have *supra*, says: "The record in this case furnishes no evidence that this paper was ever admitted to record, so that of whatever benefit it may be to the appellee as evidence to establish the amount of her demand against the estate, it cannot be invoked as creating a lien, which would give that demand a priority of payment." In Reese vs. Taylor, 25 Fla., 283, it was decided that the twenty day limit specified in the statute does not relate to the record of the mortgage, but only to the delivery of the property, and that the mortgage is invalid as well against the mortgagor as all others if there be neither delivery nor record; but that no time being prescribed within which the record must be made, it will be suffificient as against the mortgagor, though made after the debt is due, if made before suit for foreclosure, and there are no circumstances, such as unreasonable delay, or the death of the mortgagor after undue lapse of time, denoting laches, nor any fraud to impeach the transaction. It is said in the opinion in this case, after alluding to both the fact that the language of the act

confines the effect of failure to record conveyances or mortgages of real estate expressly to creditors and subsequent purchasers for value and without notice, and to the ordinary purposes of a record, which is notice to others than the parties to the instrument, that there is no escape from the plain words of the statute—"Not effectual or valid to any purpose whatever;"—and that even as between the parties, where the property is not delivered, it can have no efficacy if not recorded, thus reaching beyond the usual statutes for the protection of creditors and subsequent purchasers and including the mortgagor. Looking at the original statute as it appears in the acts of the Legislative Council of the Territory, passed at the session held in the fall of 1828, pp. 156-162, it is apparent not only from its title, *supra*, but from its context, that the Territorial Legislature was considering not only the recording of conveyances, but the regulation of them, and we find in it nothing that enables or would justify us in concluding that the Legislature did not mean to make a record an essential of a mortgage of personalty, as the terms used indicate. The language used is no less effectual or conclusive of this intent than that used as to a record of transfers or mortgages of reality, is indicative simply of intending the limited effect it accomplishes; nor is it less effectual than other provisions of the same act requiring written evidence as essential to the validity of certain undertakings between the parties thereto.

A mortgage not under seal is "an instrument of writing * * * not under seal," within the mean-

ing of the tenth section of the statute of limitations of 1872, (McClellan's Digest, p. 733, Sec. 10,) which provides that actions "upon any contract, obligation or liability founded upon an instrument of writing under seal" must be commenced within twenty years, and if "not under seal," within five years after the cause of action has accrued.　Viewing this instrument as a mortgage, a suit for its foreclosure is, since it has no seal, none being necessary to a chattel mortgage, clearly within the five-year limitation ; as it would be within the twenty-year limitation, if it had a seal.　It is settled by the decisions of Browne vs. Browne, 17 Fla., 607, and Jordan vs. Sayre, 24 Fla., 1, 3 South. Rep., 329, that an action to foreclose a sealed instrument mortgaging real estate falls within the twenty-years limitation, and in our judgment it necessarily follows that an action to foreclose an unsealed instrument mortgaging chattels is included in the former one.

In so far as this bill shows, the foreclosure of the mortgage became barred June 20th, 1879, or five years after the payment made of June 19th, 1874.　It is not shown that anything occurred between the complainant and the Johnstons, or between the complainant and the elder Johnston, as trustee, and the beneficiaries, or between complainant and all, either or any of these parties, during these five years, to keep the mortgage alive or prevent the bar of the statute, and not only is this so, but the same is true of the remainder of the thirteen years intervening between such payment and the date of the alleged credit of $5 of July, 1887,

which, in view of the allegations of the bill as to the Johnstons making payments, we must regard as a payment made by them to complainant in that month. It is true the bill informs us that the Johnstons had died when it was filed, but the only legitimate conclusion as to the time of their dying is that the younger of them died intervening this last payment and May 11th, 1889, the date of the judgment, and the elder, the trustee, between such payment and the day of filing the bill, which was May 14th of the same year, or three days after the rendition of the judgment. Upon this judgment no execution appears to have been issued.

The fraud alleged against appellees constitutes no excuse for the omission to record the mortgage, nor any for the great laches of complainant shown by the bill. So far as the pleadings show us, there was an entire absence of claim of any kind under the instrument for thirteen years. The mortgaged property was not delivered within twenty days, nor has the mortgagee ever been recorded. It is too late when the mortgagors are both dead, and over seventeen years have passed, without any attempt to foreclose the mortgage, and without any legal record or due proof of it for record, and when the mortgagors had lived during over fifteen years of this time, and have since died insolvent, for the complainant to secure the benefit of the provisions of the statute, and for a lien through a record of the instrument under the same. The complainant has by his laches lost the right to consummate his lien even as against the mortgagor,

and this being so, there is no equity in the bill. The judgment, in view of the failure to record the mortgage, establishes nothing but a personal claim against the estate of the elder Johnston, and the payment of July, 1887, is not a substitute for the record requirement made by the statute, whatever may have been its effect as to reviving the debt against the Johnstons personally.

The first section of the act of January 28th, 1853, (Sec. 2, p. 765, McClellan's Digest,) does not repeal the act of November 15th, 1828, *supra*. The section declares in effect, as does section 1 of the act of January 30th, 1838, (Sec. 1, p. 376, Thompson's Digest, and p. 765, McClellan's Digest,) that all instruments of writing made with the intention of securing the payment of money shall be deemed and held to be mortgages, (Weed v. Standley, 12 Fla., 171, 172,) and subject to the same rules of foreclosure, and the other provisions of the act were intended to prevent a vesting in the mortgagee of the legal title and a right to possession through the mere failure of the mortgagor to pay the debt secured, and to make a mortgage no more than a lien on the property mortgaged, and to preclude any claim by the mortgagee to possession through such default of the mortgagor on a mere decree of foreclosure, but it was not the purpose or effect of this act to prevent the delivery of personal property as a feature of the mode of making a valid mortgage, nor to otherwise affect the existing modes of *mortgaging chattels*.

Its origin is understood to have been prompted by the decision of Phillips vs. Hawkins, 1 Fla., 262.

Whatever rights the complainant may have through his judgment are not prejudiced by our conclusion, because they are not involved in this proceeding.

The decree is affirmed.