The ChieF Justice
delivered the opinion of the court.
The appellant, complainant, brought his bill as against defendant Davis, to foreclose a “lien” for unpaid purchase money of certain land sold by. him to Davis, and also’ to hold a crop of cotton raised on the land as subject to the same “lien” or charge, upon which cotton the defendant, Bellinger, holds a mortgage duly recorded to secure advances and supplies furnished by him to Davis to enable him to make the crop.
"Complainant 'was the owner of an equitable estate in the land and contracted to sell to Davis a legal title for three thousand dollars in three equal annual payments, dating from January 1, 1877, under which contract, (not reduced to 'writing until late in that year,)- Davis went into possession, made repairs and improvements and raised a crop of cotton.. He failed to make the first payment when due, and was proceeding to pay „ Bellinger from the avails of the cotton the money secured by the mortgage thereon when complainant filed his bill and liad a receiver appointed to take charge of the cotton and hold it until final order.
Tfie bill charges that Bellinger took his mortgage from Davis to secure advances, supplies and general indebtedness, “with full knowledge of complainant’s lien for purchase-money.”
Bellinger’s answer denies any notice or knowledge of any such lien, but says that in February, 1877, he was informed by Davis that there was no lien or incumbrance on the crops to be raised on the premises, and Davis proposed to give him a lien upon the crop to secure payment for ' advances and family and plantation supplies to be made by him during the year to enable Davis to carry on the place and make a crop, and Bellinger agreeing thereto commenced to make such advances and furnish supplies and continued to do so during the year. In May, Datfis executed to him a mortgage upon the crop, which mortgage was duly recorded in September sometime before the contract between complainant and Davis was reduced to writing, and was conditioned to secure Bellinger for advances and plantation supplies and any other indebtedness that might .be due him from Davis. That complainant knew- in the meantime that he, Bellinger, was furnishing Davis with the means of carrying on the place and of making and *81 -gathering the crop, and yet never intimated that he liad or claimed any lien or incumbrance upon it. Bellinger sets out his account in detail against Davis for supplies, &c.,- and claims that there is due him over three hundred dollars which he claims is a superior lien by virtue of his mortgage and prays that the cotton be sold and he be paid, and for general relief, and that he be dismissed, &c.
The prayer of complainant’s bill is that his equitable lien upon the land for unpaid purchase money be enforced; that Davis be foreclosed of his equity of redemption «there-' -in; that the land hot being of sufficient value to pay the amount of purchase money, interest and taxes due and to become due, and Davis being alleged to be insolvent, com•plainant will not be able to realize enough by .a sale of the land, therefore prays that the crops and products of the land, and particularly the cotton, be subjected to its payment. A receiver and an injunction were also prayed to prevent the application of the cotton or its proceeds to the satisfaction of Bellinger’s mortgage.
Testimony was taken and on Oct. 5,1878, the court decreed that Davis pay the first installment of $1000 and interest from January 1, 1877, on or before October 15, 1878; that Davis and others claiming under him be foreclosed of all equity of redemption in the “mortgaged premises,” and in case of default in such payment the land be sold and the proceeds applied to the payment of the “indebtedness;” that the master take into his charge all the crops of every description raised on the land and hold the same subject to the order of the court; that the cotton raised on the place during 1877 be taken charge of by the receiver and sold, and out of the proceeds pay the defendant Bellinger the balanece of his claim against Davis amounting to $324.78, and if a balance of the proceeds remains, it be paid over to complainant upon his claim.
"From this decree complainant-, appeals and seeks a reversal thereof so far as it decrees that Bellinger has a lien upon the cotton, by virtue of his mortgage, for supplies and advances to Davis, superior to 1 complainant’s lien thereon on account of the unpaid purchase moiiey for the land sold; that no judgment should have been given’in favor of Beb* linger upon his answer except a dismissal as to'him; and that the decree should have been in favor of complainant and against Bellinger as to the crop of cotton.
Two questions are presented here*
First, Whether this decree in favor of one of the defend}ants against his co-defendant and against the complainant, upon a simple answer (setting up a mortgage lien upon the .cotton in controversy, which he claims is superior to the lien of the complainant for purchase money,.) can be sustained; and, second, whether the complainant.is entitled, upon the whole case, to a decree against the defendant Bel1 linger, deferring the lien of th$ mortgage of .the latter to .the lien claimed by complainant upon the crops, growing .out of his lien upon the land for the purchase money.
I. As to the -first of these propositions, it seems to be the settled practice that affirmative relief must be sought by.a defendant either by a cross bill or by an independent suit, and can never (except in case of bills for an account when both parties are deemed actors,) be granted upon the facts • stated in the answer. Story’s Eq. Pl. 8th Ed., section 398, a, 522; McConnel vs. Smith, 23 Ill., 611; Armstrong vs. Pierson, 5 Clarke (Iowa,) 317; Wiseman vs. Smith, 6 Jones Eq., 124; Adams Eq. 6 Am. Ed., 402-403 and notes.
This rule is founded -upon sound principles, for a defendant or each of several defendants is called upon by the complainant to answer the allegations of the bill only, and if, under the guise of an answer, he may set up not only matters of defense to the bill, but also affirmative demands of relief as against the complainant, and, in addition, affirma- ‘ fcive claims against other defendants which they háve no means or opportunity to defend against under the issues possible to be made upon the bill, it would often result in . the confiscation of rights and property without due process of law and involve parties and suits in confusion. The affirmative relief given by the decree in this case could not possibly have been granted under any issue upon the facts stated in the bill. The priority of liens may well have been involved,' but the extent of the claim of the defendant Bellinger as against his co-defendant was not pertinent to any legitimate issue in the case under the complainant’s bill.
In Mitford’s Eq. Pl., 6th A. Ed., 100/it is said: “Upon hearing a cause it sometimes appears that the suit already instituted is insufficient to bring before the court all matters necessary to enable it to decide upon the rights of all the parties. This most commonly happens where persons in opposite interests are co-defendants, so that the court cannot determine their opposite interests upon the bill already filed, and the determination of their interests is yet necessary to a complete decree upon the subject matter of the suit. In such a case, if upon hearing the cause the difficulty appears, and a cross bill has not been exhibited to remove the difficulty, the court will direct a bill to be filed, in order to bring all the rights of all the parties fully and properly for its decision, and will reserve the directions or declarations which it may be necessary to give or make touching the matters not fully in litigation by the former bill, until this new bill is brought to a hearing.” 3 Oh. Eep., 19.
If herefore it was found by the court that, upon the 'pleadings and proofs in the case, the complainant was entitled to relief as against the defendant Davis, and that Bel-linger had a lien superior to that of the complainant, so that the latter was not entitled to a decree as against-the rights of Bellinger, the court should have dismissed the bill as to Bellinger unless within a proper time he filed his cross bill with a prayer of such relief as he might be enti-i tied to, and to the end that hfs claims might be fully ascertained and enforced as against all other parties.
II. Has the complainant such an equitable lien or “charge” upon the crops by yirtue of his equitable right to charge the land for the purchase money due upon the land as to give him a preference over a subsequent bona fide mortgage creditor with or without notice of the lien upon the land?
The rule of the civil law that a vendor of land has an equitable “lien” or a right which he may erect into a lien for the unpaid -purchase money, has been recognised by the court of chancery in England from a very early day. It ha* been .adopted also in a large majority of the States, though in some of them with considerable qualifications; and in some of ■ them it is repudiated, generally on the ground that it is founded in a secret trust, not entitled to favor in equity and contrary to the policy of the registration acts. •
The “vendor’s lien” for purchase money has, however, been expressly recognized in this State in Bradford vs. Marvin, (2 Fla., 463,) and in Woods vs. Bailey, (3 Fla., 41.) In the present case, however, the complainant does not rely solely upon the vendor’s lien as an equitable charge, because he has not conveyed the title to defendant Davis. Indeed neither party has the legal title, the complainant having only an equitable estate which he asserts could be readily, converted into a legal title. The absence of a legal title," however, is not an objection to the enforcement of the rem~. edy sought by this bill. In one of the early leading cases, Mackreth vs. Symmons, 15 Vesey, 329, Lord Eldon sustained a" bill’ where neither party had the legal estate. Here is an unexecuted contract of sale and the vendor may file a bill for a specific performance and then have the land sold *82 for the satisfaction of the purchase money. (Clark vs. Hall, 7 Paige, 382; Brush et al. vs. Kinsley, 14 Ohio, 20.) This is the purpose of the present bill so far as the land is concerned.
The vendor’s lien is regarded by some of the courts as in the nature of an equitable mortgage, inherent in the contract of sale and qualifying the ownership of the vendee, (2 Rob. Va., 404,) and by others it has been treated as a trust, incident, uniformly and necessarily, in equity, to all conveyances where the purchase-money is not paid. (3 Maryland Ch., 488; 1 Bland, 491-525.) In many States it is denied that this lien is either an equitable mortgage or a trust, and the editor of leading cases in equity in notes to Mackreth vs. Symmons, remarks that it seems to be an original- and natural equity that the creditor whose debt was the consideration of the land should, by virtue of that consideration, be allowed to charge upon the land upon failure of the personal assets. It is not regarded as a lien until a bill has been filed to assert it, when it becomes a specific lien, but this equity, though prevailing against the vendee and all claiming through him, is subordinate to the rights of subsequent lien creditors with or without notice. (L. C. in Eq., 4 Am. Ed., 600-502.) This doctrine is sustained by Mr. Justice Story in Gilman vs. Brown, 1 Mason, 192.
The rule in this State, however, has been announced to this effect, that a vendor has a lien for unpaid purchase-money of roal estate, (somewhat like unto that of an unrecorded mortgage,) “subject to be defeated by the intervention of creditors or purchasers without notice,” or is waived by taking other security. (2 Fla., 473; 3 Fla., 41.)
The extent and effect of a vendor’s lien, however, is not necessarily involved in the present case, except so far as to sustain the decree against the land and to determine whether this lien attaches to the products. The complainant insists that his position is that of a mortgagee, and he assumes in his argument that this is a proceeding to foreclose a mortgage, and that as a mortgagee he has a lien not only upon the land but upon the rents, issues and profits. He cites an opinion of this court (Pasco vs. Gamble and Poole, 15 Fla., 562,) and claims that it establishes the doctrine jbhat a mortgage is in equity a charge upon the products of the land as well as upon the land itself, and his deduction is that a mortgage upon the land is a mortgage upon the products. This is an erroneous view of the rule. A mortgage is a legal and equitable lien upon the land, but it is neither a legal nor equitable lien upon the profiits of the land.
This charge upon the produce springs out of the peculiar circumstances of the case and is not per se an incumbrance upon the crops, but the enforcement by the court of conscience of an equitable principle. As was said in Pasco vs. Gamble, “equity makes the mortgage, as between mortgagor and mortgagee a charge upon the rents and profits whenever the mortgagee is insolvent and the security is inadequate and especially is it the duty of the purchaser in possession to keep down the interest.” In this aspect, it is said by some of the authorities, “the land with all its. produce” is regarded as a security for~the mortgage debt, as between the mortgagor and the mortgagee, and where the security of the land is hazardous or clearly insufficient, a receiver may be appointed for the purpose of subjecting the rents and profits of the mortgaged land, thus charging the produce with an equity, though up to the time of the order of sequestration there was no lien upon it.
It will thus be seen that the rule indicated in Pasco vs. Gamble was not -that a mortgage upon the land covered also the crops and produce, but that under peculiar circumstances equity would charge the crops,and profits. Yet, • .though the products may be subjected, or charged in equity . with unpaid interest, taxes, &c., they cannot be &c., to be encumbered so as to give a preference to the mortgagee or vendor claiming a lien upon the land as against another creditor who may obtain an express lien upon the crops/ under the statute, or by chattel mortgage or execution. (Gilman vs. Brown, 1 Mason, 221; 1 Leading Cases in Equity, 4 Am. from 4th London Ed., Tit. “Vendor’s Lien,” 496-502.)
The question here is confined to the status of the crops grown upon the land. We have cited and alluded to some authorities upon the question of the effect of a mortgagee’s -and of a vendor’s lien, only to illustrate the character of the claim and its effect upon the rents and profits.
The mortgage given by the defendant Davis to Bellinger covered the crop of cotton in question and was executed, acknowledged and recorded long before the filing of complainant’s bill. Whether viewed as an ordinary mortgage to secure supplies and advances and to secure other indebtedness, or as a statutory lien created under the act of 1870, (Ch. 1739,) to secure advances, can make no difference here. If the defendant Bellinger acquired the first lien upon the crop, he may enforce it, by appropriate proceedings, as a prior incumbrance. The fact that some portion of the advances were made by Bellinger after the filing of the bill is not important, so far as such advances and supplies were furnished in pursuance of the terms of the mortgage and therefore secured by it.
The result of our view of this case is that the decree, so far as it affects the defendant Bellinger, must be reversed and set aside and the cause remanded with directions that the bill be dismissed as to Bellinger, unless within a certain time to be named by the order of the Circuit Court, he shall file his cross-bill setting up his rights as against the complainant and his co-defendant Davis, with the proper prayer for relief, and it is further ordered that the defend- . ant Bellinger pay the costs incurred by the complainant in this court, including the costs of the appeal.