ADDISON P. McKEOWN, APPELLANT, VS. DAVID COLLINS, APPELLEE.

1. Where two tracts of land are assessed, one being assessed to a named owner, but the other is not assessed to any owner or occupant, or as unknown, as required by the act (sections 6 and 7 of Chapter 3413 laws of Florida), but the valuation of the two tracts are aggregated, and the taxes computed upon such aggregate valuation, such assessment is fatally defective, and a tax deed based upon such an assessment is void.

2. A valid assessment of lands is an essential foundation to proceedings to subject them to sale for non-payment of taxes.

3. A tax deed upon a void and illegal assessment, and in which the description materially varies from the assessment, is wholly void, and the three years' special statute of limitations (section 61 of Chapter 3413 laws of Florida, acts of 1883, p. 39) would not apply to a suit to set aside such deed, or to recover possession of the lands attempted to be conveyed thereby.

4. Every unpaid indebtedness for purchase money of real estate does not necessarily give to the grantor a vendor's lien.

5. A vendor's lien after conveyance is not a specific absolute charge upon property, but only an equitable right of the vendor to resort to the property in case the purchase money is not paid.

6. A vendor's lien is that lien which in equity is implied to belong to a vendor for the unpaid purchase price of land sold by him, where he has not taken any other lien or security for the same beyond the personal obligation of the purchaser. Such lien is not the result of any agreement between vendor and vendee, but is simply an equity raised by the courts for the benefit of the former.

7. A lien created by express written contract or agreement between the vendor and vendee is not a vendor's lien. It is a security more in the nature of a mortgage.

8. The lien of the vendor on lands for the purchase money is lost in all cases where any security is taken on the land or otherwise for the whole or a part of the purchase money, unless there is an express agreement to the contrary. That the additional security should prove unavailing does not affect the question. The lien is waived by the taking of the security, because it

shows the intention of the vendor not to rely upon his implied equitable lien. This intention is as well shown by an informal act as by one regularly done.

9. A transcription of a mortgage upon the record without proper proof of the execution of the instrument is a mere nullity, and imports no notice to a subsequent *bona fide* mortgagee for value.

Appeal from the Circuit Court for Citrus county.

The facts are stated in the opinion.

*Angus Paterson*, for Appellant.

*T. M. Shackleford*, for Appellee.

LIDDON, J.:

The appellee filed his bill of complaint in the court below to foreclose a mortgage executed by one R. W. P. Thomas, deceased. The administrator of such deceased mortgagor, his widow, who had joined in the execution in order to bar her right of dower, and the husband with whom she had since intermarried, together with the appellant, were made parties defendant. The appellant was in the possession of the mortgaged premises claiming title thereto, and the bill sought to cancel and annul a tax deed which he claimed to be a valid title to the premises, and to declare that a sheriff's deed also held by him to a portion of such property, conveyed a title subject to complainant's mortgage. The decree was in favor of the complainant. The other defendants not desiring to appeal, proceedings against them by summons and severance have been had and the appellant alone prosecutes his separate appeal.

The first question presented by the record is whether

the tax title of the appellant was void, so that the special statute of limitations could not be invoked in aid of it. The land involved in such question consists of two tracts, *viz:* Northwest quarter of northwest quarter of section one (1), and the northeast quarter of the northeast quarter of section two (2), all in township twenty-one (21) south, range nineteen east, in Citrus county. Among other defects alleged in such tax deed, which was based upon an alleged sale for taxes made after the execution of the mortgage, it is stated, in substance, that in the assessment book for the year when such taxes were endeavored to be assessed thereon, such assessment was made in the following manner, *viz:* On page 116 of the assessment roll, in the column headed "names of tax-payers," the name of "Thomas, R. W. P." appears as the first name in said column, and in the column headed "parts of section," opposite said name, appear the letters "N. W. of N. W." Proper entries were made in the columns headed respectively "section," "township" and "range," and number of acres as for the assessment of 40 acres of land in section one of such township and range. In the second line, in the column headed "parts of section," appear the letters "N. E. of N. E.," and in the columns headed respectively "section," "township," "range" and "number of acres," appear proper entries and reference marks for the assessment of 40 acres in section two of said township and range. The column headed "names of tax-payers," the line opposite this latter attempted description of land in section two, is left entirely blank, containing no mark, word, letter or character of any kind whatever. The said tract first attempted to be described by the assessor was valued by him at "150," and the second

tract at "100," there being no dollar mark or other word, mark, figure or symbol, used at the heads of the valuation columns, or elsewhere, to indicate what denomination of money was meant or intended by the use of these figures. A certified copy of such page of the assessment rolls was attached as an exhibit to the bill of complaint and made a part thereof, and is here reproduced as follows:

McKeown v̇. Collins.—Opinion of Court.

| 1 | 2 | 3 | 4 | 5 | 6 | | | | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date of Receipts given by Collector of Revenue to Tax-payers. | Number of Receipts. | State of Florida, Hernando County. Revenue for 1885. Names of Tax-Payers. | Number of Election District. | Males over 21 and under 55, $1. | Description of Land. Parts of Section. | Section. | Township. | Range. | Number of Acres. | Number of Acres Improved and Culti-vated. | Valuation—(Except Town and City Lots)—Including Value of all Improvements. |
| Sold. | A d | Thomas, R. W. P....... | 3 | 1 | N. W. of N. W...... | 1 | 21 | 19 | 40 | 10 | 150 |
| | | | | | N. E. of N. E. ...... | 2 | 21 | 19 | 40 | ... | 100 |
| Ap. 5. | 1802 | Thompson, Mary A.... | 3 | ... | S. W. of N. W ...... | 18 | 21 | 19 | 40 | .... | 160 |
| Paid. | E4 | Thomas, Thomas......,. | 3 | 1 | N. W. of N. W....... | 15 | 21 | 19 | 40 | 25 | 215 |
| Mch. 25. | 1504 | Townsend, F. M ....... | 3 | 1 | S. W.4, N. W. of S. E | 14 | 21 | 20 | 200 | 35 | 920 |
| " " | 1505 | Townsend, Miss Emma. | 3 | .. | In N. E. of N. E...... | 14 | 21 | 1 | 8 | 4. | 70 |
| April 26. | .... | Temple, Jas. R......... | 3 | ∴ | S. E. of S. E .. ... . | 32 | 21 | 1 | 40 | ... | 80 |

| 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Valuation of Town or City Lots—Including Value of all Improvements thereon. | Number of Horses, Asses and Mules. | Number of Neat and Stock Cattle. | Number of Sheep and Goats. | Number of Swine or Hogs. | Full Cash Value of Animals. | Value all other Personal Property—(Except Animals). | Aggregate Value of Personal Property—this is obtained by adding columns 15 and 16. | Aggregate Value of real and Personal Estate—this is obtained by adding columns 9 and 10. | General Revenue... ...Mills on Total Amount of Taxable Property, or ..... cents on $100. | General School Tax—One Mill on Total Amount Taxable Property, or 10 cents on $100. | Total Taxes for State Purposes. | County Revenue—to meet the Current Expenses, Interest on Bonded Debt, and for Bridges and County Buildings ......Mill, or .. .., cents on every $100 of taxable property. | County School... ...Mills on Total Amount of Taxable Property, with $1 added for each poll. | County Special. | | Total Taxes for County Purposes. |
| | | | | | | | | 250 | 1 25 | 25 | 1 50 | 1 50 | 75 | 25 | ... | 2 50 |
| | | | | | | | | 160 | 48 | 16 | 64 | 64 | 48 | 16 | | 1 28 |
| | 1 | | | 16 | 65 | 50 | 115 | 330 | 1 49 | 33 | 1 82 | 1 82 | 99 | 33 | | 3 14 |
| | 2 | 30 | | 20 | 295 | 115 | 450 | 1370 | 4 61 | 1 37 | 5 98 | 5 98 | 4 11 | 1 37 | | 11 46 |
| | | | | | | | | 70 | 21 | 7 | 28 | 28 | 21 | 7 | | 56 |
| | 2 | 4 | | 4 | 240 | 675 | 915 | 1075 | 3 23 | 1 08 | 4 31 | 4 30 | 3 23 | 1 08 | | 8 61 |

It was further stated in the bill of complaint that the assessor, in the column headed "aggregate value of real estate," appears to have valued the two tracts together at "250," and the respective taxes were assessed upon this aggregate valuation.

By reason of the foregoing facts, the complainant claimed in his bill of complaint that the second parcel of land hereinbefore described as being involved in the controversy, and attempted to be described in the second line of said page of said assessment roll, was not, as required by law, assessed either to the owner or occupant, or as unknown, and that the assessment of both parcels was illegal and void for the reason that the description and valuation of both of said parcels of land were vague, indefinite and uncertain, and not in accordance with the statute in such cases made and provided. The bill further states that the tax collector proceeded to advertise such lands, and to sell them in pursuance of said advertisement, on June 7th, 1886. The lands were described as the N. W. qr. of N. W. qr. of section 1, and N. E. qr. of N. E. qr. of section 2, stating the proper township and range, and that the first tract was assessed to Thomas, R. W. P., and the second to "do," the aggregate taxes and costs against both parcels being "545." The said lands were sold under said advertisement at tax sale June 7th, 1886, to the defendant Addison P. McKeown. A certificate issued upon this sale, with same description as the advertisement, upon which a tax deed was executed June 10th, 1887, and the same was duly recorded. The complainant claims that the tax deed was void for reason of the matters stated.

The answer does not dispute the allegations of the bill as to irregularities and defects in the tax proceed-

ings, but denies that complainant can avail himself of such irregularities and defects, because defendant's tax deed had been recorded more than three years before complainant's suit was brought, and that such suit was barred by the special statute of limitations in such case made and provided, *viz:* Section 61 of Chapter 3413 laws of Florida, acts of 1883, page 39. Considerable argument is made as to whether the complainant is a "former owner, claimant or assign," within the meaning of the act, so as to be barred by the terms of the same. Whether he being a mortgagee of the property is an assign in contemplation of the act, is a question about which there seems to be a great scarcity of authority. Brown vs. Crookston Agricultural Association, 34 Minn. 545, 26 N. W. Rep. 907, citing Nopson vs. Horton, 20 Minn. 268. It will appear from what is hereinafter stated that it is not necessary to decide the question in the present case, and therefore it is left undetermined.

The statute above cited provides, with a saving clause for persons under specified disabilities, that "no suit or proceeding shall be commenced * * *. to set aside any deed made in pursuance of any sale of lands for taxes, or against the grantee in such deed, * * unless such suit or proceedings be commenced within three years after the recording of such deed in the county where the lands lie." In the assessment roll herein set forth only letters are used, and no words or numbers are to be found which were necessary in connection with such letters to a clear and precise statement of the fractional subdivisions of the respective sections in which the lands were located. The advertisement, certificate and deed improperly varied from the assessment in inserting words which were

necessary, or were deemed by those intrusted with the execution of the tax laws, to be necessary to a correct and accurate description of the land. This variance was undoubtedly an irregularity. Whether it was such an irregularity as to render the deed absolutely void so as to prevent the bar of the statute of limitations applying to it, is not necessary to decide, for the reason that we find, as hereinafter shown, other features of the tax proceedings under which the sale was made to be such violations of the law relating to assessments and sales of land for taxes, as make the assessment void, and wholly invalidates the deed. The second tract was not assessed as required by the act, in this, that no name of any owner or occupant was given, nor was it assessed as unknown, as required by law. Sections 6 and 7 of Chapter 3413 laws of Florida, acts of 1883, pp. 18, 19.

The assessment was also fatally defective as to both tracts of land, because the respective amounts of valuation—the valuation of that which was assessed to "Thomas, R. W. P.," as well as that which was not assessed to any owner—were aggregated, and the taxes computed upon such aggregate valuation. The taxes should have been computed upon each tract separately, upon the separate cash value thereof. Subdivision 2 of section 18, Chapter 3413, acts of 1883, p. 25. A tax deed, where the assessment is not thus made, but where the valuation of several tracts is aggregated and the taxes assessed accordingly, is void. Levy vs. Ladd, *supra*, 35 Fla. 391, 17 South. 635.

A valid assessment of lands is an essential foundation to proceedings to subject them to sale for non-payment of taxes. A sale without such assessment is a nullity. Augusti vs. Lawless, 43 La. Ann. 1097, 10

South. Rep. 171. It has been determined by this
court that a sale upon a void assessment is not within
the bar of the statute. Sloan vs. Sloan, 25 Fla. 53,
text 69 *et seq.*, 5 South. Rep. 603. And likewise of a
sale where there had been no assessment (Townsend
vs. Edwards, 25 Fla. 582, 6 South. Rep. 212), or where
the calls of the deed are materially different from the
land on the assessment roll. Grissom vs. Furman, 22
Fla. 581; Carncross vs. Lykes, 22 Fla. 587. The pro-
visions of the statute of limitations do not apply where
the land was not assessed to the owner or occupant, or
to an unknown owner, and by an official and accurate
description. Bird vs. Benlisa, 142 U. S. 664, 12 Sup.
Ct. Rep. 323.

Besides the variance noticed, the tax deed and cer-
tificate also varied from the description in the assess-
ment roll, in showing that all of the property was as-
sessed to "Thomas, R. W. P." It follows from what
has been said, and from authorities cited, that a tax
deed upon such a void and illegal assessment, and in
which the description so varied from the assessment
was wholly void, and the three years' statute of limi-
tations would not apply to a suit to set aside such deed,
or to recover possession of the lands attempted to be
conveyed thereby.

The court held that the sheriff's deed to one of the
forty-acre tracts of land in question conveyed to the
appellant grantee therein the land subject to the mort-
gage of complainant. The facts in reference to this
deed are as follows, *viz:* The land embraced in the
sheriff's deed was formerly owned in fee by one R. B.
Standley, who, on May 16th, 1884, sold and conveyed
the same to the aforesaid R. W. P. Thomas. Thomas
executed to said Standley a paper of which the fol-

lowing is a certified copy from the record of mortgages for Hernando county:

"R. W. P. Thomas to R. B. Standley.—Lien Note.

Twelve months after date I promise to pay R. B. Standley, or bearer, the sum of three hundred and fifty dollars, for value received, this sixteenth day of may, 1884. And to further secure the above note, I hereby give a lien on the N. E. ¼ of N. E. ¼ of sec. 2, township 21, range 19, lying and being in Hernando county, Florida. This note is given to secure a part payment on said described land as purchase money for said land.                   ROBERT W. P. THOMAS.

Witness: JNO. C. LAW.

Recorded by me this 16th day of May, A. D. 1884. Jno. C. Law, Clk." The lands are situated in that portion of Citrus county which was formerly Hernando county. Said note was transferred to the appellant who brought an action and recovered judgment upon the same against said Thomas. Execution issued upon said judgment and the land was sold thereunder, and purchased by the appellant, and upon such purchase the deed in dispute was made. The note sued upon was made before the complainant's mortgage. But it was long after the execution and record of said mortgage that appellant obtained his judgment and execution and made sale thereunder. The complainant was not made a party to these proceedings. It is not shown that he had any notice or knowledge of them, or of the obligation in writing upon which they were obtained. It is only claimed that he had constructive notice from the alleged record of the instrument. The appellant insists that the sheriff's deed should be held superior to the mortgage of the complainant, because the obligation upon

which judgment was obtained constituted a vendor's lien upon the land. It is also claimed that in addition to being a vendor's lien, the paper was a mortgage and older than the complainant's mortgage, and therefore entitled to precedence and priority. According to the weight of authority in this country it seems to us that to admit either of these contentions shows that the appellant can not succeed in his appeal. Conceding that the paper was "a vendor's lien," not in the sense in which the expression is often carelessly used by the courts, but in its true legal meaning and signification, according to such authority, the appellee, holding by an assignment, could not maintain any action upon it for the reason that such a lien is not assignable. As for reasons directly to be stated, we do not deem the paper as constituting a vendor's lien, we make no useless discussion upon the question of its non-assignability. As it is not necessary, we do not expressly decide the question, but refer to a few of the many authorities which we have examined upon the subject: 2 Jones on Liens, sec, 1092, and authorities collated in note; 28 Am. & Eng. Ency. of Law, p. 169 *et seq.*, and authorities cited in notes; Fish vs. Howland, 1 Paige, 20, text 26-7, cited in Woods vs. Bailey, 3 Fla. 41, text 66. Every unpaid indebtedness for purchase money of real estate does not necessarily give to the grantor a vendor's lien. According to the proper legal definition of the term, the paper relied upon by the appellant did not constitute a vendor's lien upon the property. A vendor's lien after absolute conveyance is not a specific absolute charge upon the property, but only an equitable right of the vendor to resort to the property in case the purchase money is not paid. Baum vs. Grigsby, 21 Cal. 172, S.

C. 81 Am. Dec. 153. Such a lien is not the result of any agreement between vendor and vendee, but is simply an equity raised by the courts for the benefit of the former. Avery vs. Clark, 87 Cal. 619, S. C. 22 Am. St. Rep. 272. A vendor's lien is that lien which in equity is implied to belong to a vendor for the unpaid purchase price of land sold by him, where he has not taken any other lien or security for the same beyond the personal obligation of the purchaser. 2 Jones on Liens, sec. 1107; Bradford vs. Marvin, 2 Fla. 463, text 471; Woods vs. Bailey, 3 Fla. 41, text 70, citing Fish vs. Howland, 1 Paige, 30; Carpenter vs. Mitchell, 54 Ill. 126; Kirkham vs. Boston, 67 Ill. 599. Such liens are the creatures of equity, and not by the contract of the parties. Dingley vs. Bank of Ventura, 57 Cal. 467. The case last cited is very similar in its facts to the present case. In that case the court quoted the California civil code, which is only a statutory enactment of the general principles of equity upon the subject, as follows: "One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer;" and further said: "In the case under consideration the purchase price remaining unpaid was not 'unsecured otherwise than by personal obligation of the buyer;' for the parties to the deed expressly contracted that the vendor should have a lien for the unpaid purchase price. It is not, therefore, a vendor's lien, but rather a lien secured to the vendor by the contract of the parties. It was, in effect, though not technically, a mortgage." In the present case the lien claimed by appellant is not one raised by implication

of law in the absence of other security, which is an essential element of a vendor's lien, but is a lien arising from an express contract or agreement between the parties. Such a security is not a vendor's lien. It is a security more in the nature of a mortgage. Wright vs. Troutman, 81 Ill. 374, text 377, and authorities cited *supra*. The appellant, or rather Standley through whom he claims, waived his vendor's lien by taking other security upon the land sold. The first utterance in this State upon the subject was in Bradford vs. Marvin, 2 Fla. 463, text 473, where it is said "that where a separate or independent security is taken by the vendor, other than the personal security of the vendee, it is *prima facie* evidence of a waiver of the equitable or implied lien upon the land sold, and the *onus* is upon the vendor to prove that it ought not to have that effect." The later case of Woods vs. Bailey, 3 Fla. 41, states the proposition more emphatically: "The lien of the vendor on lands for the purchase money is lost in all cases where any security is taken on the land, or otherwise, for the whole or any part of the money, unless there is an express agreement to the contrary." This latter case appears to be in harmony with the general trend of judicial opinion upon the subject. 2 Jones on Liens, sec. 1086 *et seq.*, and authorities cited in notes; 28 Am. & Eng. Ency. of Law, p. 176 *et seq.*, and cases cited; Wells vs. Harter, 56 Cal. 342; Chicago & Great Western R. R. Land Co. vs. Peck, 112 Ill. 408; Walker vs. Struve, 70 Ala. 167; Orrick vs. Durham, 79 Mo. 174. In most of these cases where the lien was held to be waived by taking additional security, such security consisted only in the mortgage upon the premises sold. In this case a se-

curity was taken upon the land sold, and there is nothing to show any express agreement that the taking of such security was not intended to waive the vendor's lien. Avery vs. Clark, 87 Cal. 619, S. C. 22 Am. St. Rep. 272; Osborne vs. Royer, 1 B. J. Lea, 217; 2 Jones on Liens, sec. 1107 *et seq.* That the additional security should prove unavailing, does not affect the question.

The lien is waived by the taking of additional security, because it shows the intention of the vendor not to rely upon his implied equitable lien. This intention is as well shown by an informal act as by one regularly done. Hunt vs. Waterman, 12 Cal. 301; 2 Jones on Liens, sec. 1088; Camden vs. Vail, 23 Cal. 633; Partridge vs. Logan, 3 Mo. App. 509. If we admitted, which we do not, that the instrument relied upon by the appellant was a mortgage, it could not help his case. Construing the instrument as a mortgage under our statute (McClellan's Digest, sec. 6, p. 215; Revised Statutes, secs. 1972–3), it was not good or effectual in law or in equity against the complainant, who was a mortgage creditor, unless it had been recorded as provided by the act. The act provides that in order to procure the recording of the instrument, the execution thereof shall be proved or acknowledged for record in the manner therein specified. The instrument relied upon by the appellant as a mortgage upon the property appears to have been transcribed upon the proper record, yet it can not be said to have been recorded as provided by law, because there appears to have been no proof or acknowledgement of its execution as is required by the statute. A transcription upon the record without proper proof of the execution of the instrument is a mere nullity, and imports no notice to a subsequent *bona fide* mortgagee

for value. Edwards vs. Thom. 25 Fla. 222, 5 South. Rep. 707; Townsend vs. Edwards, 25 Fla. 582, 6 South. Rep. 212; Kendrick vs. Latham, 25 Fla. 819, text 832, 6 South. Rep. 871; Hope vs. Johnson, 28 Fla. 55, text 61, where other Florida cases are collected, 9 South. Rep. 830; Parker, Holmes & Co. vs. Cleveland, 37 Fla. 39, 19 South. Rep. 344.

There is no error in the decree of the Circuit Court, and it is affirmed.